UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JORGE CASTRO,

        Plaintiff,

     v.

DELAWARE RIVER PORT
AUTHORITY, et al.,

        Defendants.

Civil No. 13-4467 (NLH/KMW)

**OPINION**

<u>**APPEARANCES**</u>:

Francis Joseph Masciocchi, Esquire
309 Fellowship Road
Suite 200
Mount Laurel, New Jersey 08054

    *Attorney for Plaintiff Jorge Castro*

Lynne E. Evans, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103

    *Attorney for Defendants Delaware River Port Authority, Port*
    *Authority Transit Corporation, P/O Mark Pawloski, Sgt.*
    *Raia, and P/O Jones*

<u>**HILLMAN, District Judge**</u>:

    This matter comes before the Court by way of Defendants'

motion [Doc. No. 9] to dismiss Plaintiff's complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  The Court has

considered the parties' submissions and decides this matter

pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendants' motion will be granted in part and denied in part.

I.   <u>**JURISDICTION**</u>

In the complaint [Doc. No. 1], Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights as well as state law claims for negligence, assault, battery, false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress. The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

II.  <u>**BACKGROUND**</u>

Plaintiff names the following entities and individuals as Defendants in this action: (1) the Delaware River Port Authority (hereinafter, "DRPA"); [1] (2) the Port Authority Transit Corporation (hereinafter, "PATCO"); (3) Mark Pawloski, a police

---

[1]   While not named as a Defendant in this matter, Plaintiff also alleges in the complaint that the Delaware River Port Authority Police Department is a division of the DRPA which "provides services on all DRPA properties in Pennsylvania and New Jersey, including the Delaware River bridges between Philadelphia and New Jersey and the PATCO Speedline rail line between Lindenwold, Camden County, New Jersey and the City of Philadelphia, Pennsylvania."  (Pl.'s Compl. [Doc. No. 1] ¶ 8.)

officer employed by the DRPA; (4) Sergeant Raia, a police officer employed by the DRPA, first name unknown; and (5) an third police officer employed by the DRPA and identified in the complaint as "P/O Jones, first name unknown[.]"[2]  (Pl.'s Compl. [Doc. No. 1] ¶¶ 3-7.)

As set forth in the complaint, Plaintiff alleges that the incident giving rise to his claims occurred on July 26, 2011, "at approximately 2:53 in the afternoon[.]"  (Id. ¶ 9.)  Plaintiff represents that according to "the National Weather Service, the temperature on July 26, 2011 at 2:53 PM had reached 92° Fahrenheit[.]"  (Id. ¶ 10.)  At that time, Plaintiff alleges that he was "lawfully on DRPA property ... in a panic and in fear[,] believing that someone was trying to do him harm[.]"[3]  (Id. ¶ 9.)

---

[2]   Collectively, Defendants Pawloski, Raia, and Jones will be referred to as "the Defendant Officers" or "the Officers".

[3]   The complaint itself does not specify the exact location where the incident allegedly occurred.  Plaintiff only alleges that "the parking lot and grounds in question were owned, operated and/or maintained by the DRPA and/or its affiliate PATCO.)  (Id. ¶ 15.)
The Delaware River Port Authority Police Department Miscellaneous Incident Report, (hereinafter, "DRPA Incident Report"), attached to Defendants' motion to dismiss as Exhibit A, reveals that this incident occurred in a DRPA parking lot located near 5th and Elm Street in Camden, New Jersey, adjacent to the Ben Franklin Bridge.  (DRPA Incident Report [Doc. No. 9-3] 1.)  For the reasons set forth more fully infra, the Court may properly consider the DRPA Incident Report in deciding the present motion to dismiss without converting the motion to one for summary judgment.  This is particularly true where the

3

Plaintiff asserts that he was "seeking police assistance" and apparently approached Defendant Pawloski for that purpose.  (Id.) Upon approaching Defendant Pawloski, Plaintiff claims that "Defendant Pawloski knocked [Plaintiff] to the ground and kept him pinned on the extremely hot asphalt surface."  (Id.) Plaintiff contends that "the surface temperature of the asphalt surface [at the time] was in excess of 130° Fahrenheit."[4]  (Id. ¶ 10.)  Plaintiff further claims that Defendants "Sgt. Raia and Officer Jones" assisted Defendant Pawloski.  (Id. ¶ 9.) Plaintiff contends that these Defendants "were acting in their capacitates [sic] as police officers of [D]efendant DRPA" at the time of this incident.  (Id. ¶ 14.)

Plaintiff claims that he "was left exposed with a significant portion of his body in contact with the heated asphalt surface" for an unspecified period of time, which ultimately resulted in him suffering "second degree burns to 24.4 percent of his total body surface[,]" including portions of his

_____

Court's reliance upon the DRPA Incident Report is limited to minor clarification of facts which are consistent with those alleged in the complaint itself.

[4]    The DRPA Incident Report prepared by Defendant Pawloski indicates that he "restrained [Plaintiff] by putting him on the ground and handcuffing him."  (DRPA Incident Report [Doc. No. 9-3] 1.)  The DRPA Incident Report further explains that Plaintiff "did not resist but continued to scream and act erratic[ly]" during this incident.  (Id.)

abdomen, chest, chin, and legs.  (Id. ¶ 11.)  Plaintiff also

asserts that he "suffered [r]espiratory failure; [a]cute kidney

injury, i.e. renal failure secondary to rhabdomyolysis requiring

dialysis; [and] [h]eatstroke."[5]  (Id. ¶ 12.)  As a result of this

incident, Plaintiff contends that he is now "permanently scarred

and disabled."  (Id.)  Plaintiff alleges that Defendants "knew or

should have known that their actions were causing harm to

[P]laintiff; that [P]laintiff was in obvious pain and discomfort

and that unless [P]laintiff was immediately removed from contact

with the surface of the heated ground[,] he would suffer serious

and permanent injury."  (Id. ¶ 13.)

     Based on the facts alleged in the complaint, Plaintiff

asserts the following claims: (1) a Section 1983 claim for

violations of Plaintiffs federal civil rights in Count I; (2)

negligence in Count II; and (3) assault, battery, false arrest,

false imprisonment, malicious prosecution, and intentional

infliction of emotional distress in Count III.  (Id. ¶¶ 16-34.)

Although the complaint is not a model of clarity, it appears that

---

[5]   Plaintiff's complaint does not define rhabdomyolysis.  The
term rhabdomyolysis is defined as "the destruction or
degeneration of muscle tissue (as from traumatic injury,
excessive exertion, or stroke) accompanied by the release of
breakdown products into the bloodstream and sometimes leading to
acute renal failure[.]"  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1069
(11th ed. 2003).

Plaintiff's Section 1983 claim is based upon purported violations of his First, Fourth, and Fourteenth Amendment rights. (<u>Id.</u> ¶ 20.)  In particular, Plaintiff asserts that he was "deprived of his right to be free from unreasonable and excessive force; free from unnecessary harm and danger; to be secure in [his] person and property and to due process of law." (<u>Id.</u>)

## III. <u>DISCUSSION</u>

### A.   **Standard of Review**

Defendants now move for dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

claim.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007)
(quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also
Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in
Twombly expounded the pleading standard for 'all civil actions'
. . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.
2009) ("Iqbal . . . provides the final nail-in-the-coffin for
the 'no set of facts' standard that applied to federal
complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has
instructed a two-part analysis in reviewing a complaint under
Rule 12(b)(6).  First, the factual and legal elements of a claim
should be separated; a district court must accept all of the
complaint's well-pleaded facts as true, but may disregard any
legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129
S. Ct. at 1950).  Second, a district court must then determine
whether the facts alleged in the complaint are sufficient to
show that the plaintiff has a "'plausible claim for relief.'"
Id. (quoting Iqbal, 129 S. Ct. at 1950).

"[A] complaint must do more than allege the plaintiff's
entitlement to relief."  Fowler, 578 F.3d at 211; see also
Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)
(stating that the "Supreme Court's Twombly formulation of the

pleading standard can be summed up thus: 'stating . . . a claim
requires a complaint with enough factual matter (taken as true)
to suggest' the required element.  This 'does not impose a
probability requirement at the pleading stage,' but instead
'simply calls for enough facts to raise a reasonable expectation
that discovery will reveal evidence of' the necessary element").
That is, the "complaint has to 'show' such an entitlement [to
relief] with its facts."  Fowler, 578 F.3d at 211.  A court need
not credit either "bald assertions" or "legal conclusions" in a
complaint when deciding a motion to dismiss.  In re Burlington
Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).
The defendant bears the burden of showing that no claim has been
presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)
(citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406,
1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must
only consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.
S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,
181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's

claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  FED. R. CIV. P. 12(b).

### B.    42 U.S.C. § 1983

In asserting that his federal civil rights were violated, Plaintiff seeks to bring a claim under 42 U.S.C. § 1983 primarily for the use of excessive force against him in violation of his Fourth Amendment rights.[6]  To be clear, Section 1983 is not a source of substantive rights, but provides a vehicle for vindicating the violation of other federal rights. Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Section 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

---

[6]    In the complaint, Plaintiff also alleges that his First and Fourteenth Amendment rights were also violated.  (Pl.'s Compl. ¶¶ 20, 24.)

to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"  42 U.S.C. § 1983.

    "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." Morrow v. Balaski, 719 F.3d 160, 165-66 (3d Cir. 2013) (citing Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).  The Court's "'first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Morrow, 719 F.3d at 166 (quoting Nicini, 212 F.3d at 806.)

    Here, Plaintiff alleges that his Fourth Amendment right to be free from unreasonable searches and seizures was violated when the Defendant Officers, acting under color of state law and local authority, used unreasonable and excessive force on Plaintiff during the incident on July 26, 2011. (Id. ¶ 20.)  He further asserts that Defendant DRPA, through its Police Department, has "encouraged, tolerated, ratified and have been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training,

supervision, investigation or discipline" in a variety of areas. (Id. ¶ 22.)

IV.  **ANALYSIS**

In the present motion to dismiss, Defendants seek to dismiss both Plaintiff's Section 1983 claims and his state law tort claims as asserted against all Defendants.  With respect to the Section 1983 claims, Defendants make three primary arguments in support of dismissal: (1) the Section 1983 claims against Defendants DRPA and PATCO fail to sufficiently alleged a policy or custom that led to a violation of Plaintiff's rights; (2) Plaintiff is not entitled to punitive damages from Defendants DRPA and PATCO under Section 1983; and (3) the Defendant Officers are entitled to qualified immunity for Plaintiff's Section 1983 claims.

As to Plaintiff's state law tort claims, Defendants argue that these claims are barred against the Defendant Officers based on Plaintiff's failure to provide the required notice under the New Jersey Tort Claims Act.  Defendants further extrapolate, that because the state law claims must be dismissed against the Defendant Officers for failure to properly notice them in accordance with the Tort Claims Act, these claims must

11

also be dismissed against the DRPA and PATCO.  The Court addresses these arguments in turn.

### A.    Plaintiff's Section 1983 Claims Against DRPA and PATCO[7]

(1)  The DRPA and PATCO's Liability under Section 1983

Generally, "a municipality cannot be held liable under § 1983 on a _respondeat superior_ theory."  Marvel v. Cnty. of Del., 397 F. App'x 785, 790 (3d Cir. 2010) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)).  A municipality may be held liable under 42 U.S.C. § 1983 "'only ... when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.'"  Mulholland v. Gov't of the Cnty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013) (citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)).  Accordingly, "there are two ways that a plaintiff can establish municipal liability under § 1983: [either] policy or custom."  Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007).

"Under Monell, a plaintiff shows that a policy existed when a decision maker possess[ing] final authority to establish

---

[7]    At the outset, the Court notes that the Third Circuit has previously held that Defendant DRPA is a "person" amendable to suit under 42 U.S.C. § 1983.  Peters v. Del. River Port Auth., 16 F.3d 1346, 1352 (3d Cir. 1994).

municipal policy with respect to the action issues an official proclamation, policy, or edict." Watson, 478 F.3d at 155 (citation and internal quotations omitted). Alternatively, "[a] plaintiff may establish a custom ... by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. In other words, custom may be established by proving knowledge of, and acquiescence to, a practice." Id. at 155-56 (citation and internal quotations omitted). Where municipal liability is premised on an unofficial custom, the plaintiff must "produce facts tending to show the [municipality] knew of a pattern of constitutional violations or that such consequences were so obvious the [municipality's] conduct can only be characterized as deliberate indifference." Pelzer v. City of Phila., 656 F. Supp. 2d 517, 533 (E.D. Pa. 2009). "In addition to proving that an unlawful policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered." Watson, 478 F.3d at 156.

Here, Defendants DRPA and PATCO argue that Plaintiff's Section 1983 claims against these entities must be dismissed because Plaintiff has "failed to properly allege that a government policy or custom led to the [O]fficers' alleged use

of excessive force." (Defs.' Mem. of Law in Supp. of their Mot. to Dismiss Pl.'s Compl. [Doc. No. 9-1], (hereinafter, "Defs.' Mem."), 4.) According to Defendants, "Plaintiff's allegations against [the] DRPA and its police department boil down to" a conclusory assertion that these "municipal defendants 'encouraged, tolerated, ratified and have been deliberately indifferent to ... patterns, practices and customs' of officers using excessive force." (Id. at 6.) Despite this broad allegation, Defendants contend that Plaintiff has only pointed "to a single, isolated incident of alleged wrongdoing as the basis for his unlawful municipal policy or custom claim, i.e., his own encounter with the [O]fficers on July 26, 2011[,]" which is insufficient to establish municipal liability under Section 1983. (Id.)

In his opposition, Plaintiff asserts at the outset that Rodriguez v. City of Camden, No. 12-2652, 2013 WL 530863 (D.N.J. Feb. 11, 2013), a case heavily relied upon by Defendants, and Monell, 436 U.S. 658, are not applicable here. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pl.'s Compl. [Doc. No. 10], (hereinafter, "Pl.'s Opp'n"), 3.) Rather, Plaintiff argues that Defendants "make Plaintiff's point" by citing to Connick v. Thompson, 131 S. Ct. 1350 (2011) for the proposition that a municipality may be liable where its policymakers are on actual

or constructive notice that a particular omission in their training program causes city employees to violates citizens' constitutional rights and they choose to retain that program.[8] (Id. at 3-4.) Plaintiff contends that "[i]t is exactly that indifference that is at play[.]" (Id. at 4.)

---

[8] The basis for Plaintiff's argument that Monell is not applicable here is unclear to the Court. It is well settled that the only mechanism for establishing municipal liability under 42 U.S.C. § 1983 is that set forth in Monell and its progeny. Plaintiff's attempt to argue that Monell is not applicable to this case, and that the Court should rely on Connick instead of Monell is misguided.

Connick specifically cites to, and relies upon, Monell to explain the manner of establishing municipal liability under Section 1983. See Connick, 131 S. Ct. at 1359-60 (recognizing that "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy" caused their injury. ... Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.") (citing Monell, 436 U.S. at 691, 694).

To the extent Plaintiff seeks to rely on the deliberate indifference standard detailed in Connick, it is clear that this standard is derived from, and encompasses within it, the Monell standard of municipal liability under Section 1983. 131 S. Ct. at 1360 (explaining that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's 'policy of inaction' in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.") (citations and internal quotations omitted).

Plaintiff appears to further argue that Defendant Sergeant Raia tacitly endorsed Defendant Pawloski's conduct on July 26, 2011, and that his tactic endorsement can serve as a basis for municipal liability against the DRPA and PATCO under Section 1983.  (Id. at 3.)  Plaintiff represents that Defendant Sergeant Raia is a "sergeant in the DRPA Police Department and [he] is [Defendant] Pawloski's supervisor[,]" who was present "on the scene at the time of the incident."  (Id. at 2-3.)  Plaintiff alleges that, at no time, did Defendant Sergeant Raia "intervene on behalf of Plaintiff" or make any "attempt to remove Plaintiff from the asphalt surface."  (Id. at 3.)  Additionally, Defendant Sergeant Raia co-signed Defendant Pawloski's DRPA Incident Report.  (Id.)  Thus, Plaintiff argues that Defendant Sergeant Raia's "presence and endorsement of Defendant Pawloski's report is at a minimum, indicia that Defendant Pawloski's conduct was consistent with department policy."  (Id.)  Relying on this "tacit endorsement" argument, Plaintiff asserts that his complaint contains factual allegations, not mere conclusions, sufficient to withstand dismissal.  (Id.)

For Plaintiff to establish a municipal liability claim against the DRPA or PATCO for either an unconstitutional policy or custom, "[i]t is clear ... [that Plaintiff] 'must show that an official who has the power to make policy is responsible for

16

either the affirmative proclamation of a policy or acquiescence in a well-settled custom.'"  <u>Watson</u>, 478 F.3d at 156 (citation omitted).  Here, Plaintiff's municipal liability claim against the DRPA and PATCO boils down to the allegations set forth in paragraphs 22 and 23 of the complaint.  In their entirety, those paragraphs allege:

> 22.  Defendant DRPA and its Police Department have encouraged, tolerated, ratified and have been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:
> A. The use of unreasonable force, excessive force and/or unlawful arrest or detention by officers;
> B. The proper exercise of police powers, including but not limited to the unreasonable use of force, excessive force, unlawful arrest, detention and other constitutional rights;
> C. The monitoring of officers whom it [k]new or should have known were abusing their authority or were lacking ability to function as officers;
> D. Police officers' use of their status as police officers to employ the use of excessive force and/or unlawful arrest, or to achieve ends not reasonably related to their police duties; and
> E. The failure of police officers to follow established policies, procedures, directives and instructions regarding the use of force, detention and arrest powers under such circumstances as presented herein.
> F. Failure to train and monitor officers in the judgment and use of fundamental safety measures and first aid.
> 23.  The Defendant DRPA and its police department have failed to properly sanction or discipline officers, who are aware of conceal and/or aid and abet violations of constitutional rights of citizens by other officers, thereby causing and encouraging DRPA police, including the Defendant officers in this

17

> case, to violate the rights of citizens such as
> Plaintiff, Jorge Castro.

(Pl.'s Compl. ¶¶ 22, 23.)

Even a liberal reading of Plaintiff's complaint makes clear
that Plaintiff has failed to set forth sufficient factual
allegations, taken as true, to show that he has a plausible
claim for relief for municipal liability against the DRPA and
PATCO.  The allegations of his complaint merely constitute a
recitation of the legal elements necessary to establish a
municipal liability claim under Section 1983.  They amount to
nothing more than legal conclusions which the Court must
disregard in deciding the present motion to dismiss under Rule
12(b)(6).  Plaintiff has not alleged enough factual matter on
any of the required elements from which the Court could conclude
that the facts of this case suggest each element of his claim.
Plaintiff does not identify a single fact that raises a
reasonable expectation that discovery would reveal evidence
supporting his claim that the DRPA and PATCO maintain a policy
or custom warranting the imposition of municipal liability under
Section 1983.  These vague and cursory allegations do not even
identify: (1) a decisionmaker at the DRPA or PATCO possessing
final authority to issue a DRPA or PATCO policy or who had
knowledge of a well-established custom; (2) the specific policy

or custom that Plaintiff claims led to the alleged violation of
his constitutional rights;[9] or (3) a single incident beyond his
own encounter with DRPA Officers on July 26, 2011, wherein DRPA
Officers or Officials, pursuant to this alleged policy or
custom, were deliberately indifferent to the constitutional
rights of citizens.  Tellingly, the section of Plaintiff's
complaint entitled "Facts" only confirms the absence of
sufficient factual allegations to support Plaintiff's claim of
municipal liability.  Nothing in paragraphs 9 through 15, which
describe in detail the incident of July 26, 2011, explains how
that incident is the result of a municipal policy or custom on
behalf of the DRPA or PATCO.  In fact, neither the words
"policy" or "custom" even appear in the factual allegations of
the complaint.  (See Pl.'s Compl. ¶¶ 9-15.)

     To the extent Plaintiff attempts to argue in his opposition
that the complaint sufficiently alleges that a claim for
supervisory liability on the part of Defendant Sergeant Raia,
the Court rejects that argument.  Plaintiff claims that

---

[9]   The Third Circuit has made clear that "[w]hen a Plaintiff
brings a complaint under Monell against a municipality, the
offending custom, policy, or practice must be plead specifically
in the complaint. Lapella v. City of Atlantic City, No. 10-
2454, 2012 WL 2952411, *5 (D.N.J. July 18, 2012) (citing
McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009)).

Defendant Sergeant Raia's presence at the scene on July 26, 2011, his failure to intervene on Plaintiff's behalf, and his subsequently signing of the DRPA Incident Report constitute a "tacit endorsement" of Defendant Pawloski's conduct, reflecting that this conduct is consistent with a DRPA or PATCO policy or custom is insufficient to support his claim for municipal liability against the DRPA or PATCO.[10]  The complaint itself does not allege that Defendant Sergeant Raia, himself, had any final decision-making authority to issue a policy on behalf of the DRPA or PATCO, or that he had actual or constructive knowledge of a well-established custom of DRPA Officers violating the constitutional rights of citizens.

Accordingly, the Court agrees with Defendants DRPA and PATCO that Plaintiff has failed to state a claim upon which relief can be granted against these DRPA or PATCO for municipal

---

[10]    The Court also notes that Plaintiff only makes these assertions regarding Defendant Sergeant Raia's tacit endorsement reflecting DRPA policy in opposition to the pending motion to dismiss.  There are no such allegations in the complaint itself, and the Court need not consider them or accept them as true in ruling on the present motion.  See Mindlance, Inc. v. DeVinney, No. 14-00098, 2014 WL 1577698, at *5 n.5 (D.N.J. Apr. 21, 2014) (recognizing that new facts introduced in the opposition brief to a motion to dismiss "which are utilized ... in support of [a plaintiff's] argument that the Complaint states plausible claims" cannot "be used to defeat a motion to dismiss" where those facts "are not pleaded in the Complaint").

liability under Section 1983, and these claims against
Defendants DRPA and PATCO will therefore be dismissed.

(2)  *Plaintiff's Entitlement to Punitive Damages*

Defendants argue that to "the extent Plaintiff seeks to
recover punitive damages from DRPA or PATCO, such claims must be
dismissed" because municipalities are immune from punitive
damages for Section 1983 claims.  (Defs.' Mem. 8) (citing City
of Newport v. Fact Concerts, 453 U.S. 247, 271 (1981) (holding
"that a municipality is immune from punitive damages under 42
U.S.C. § 1983.")).  Defendants also cite Eick v. Del. River Port
Auth., No. 91-2707, 1992 U.S. Dist. LEXIS 22710, at *12 (D.N.J.
Jan. 16, 1992), in support of this argument, noting that the
district court in Eick granted the DRPA's motion to dismiss on
the same type of claim because "the DRPA is immune from a claim
of punitive damages arising in conjunction with a § 1983
action[.]"

In opposition, Plaintiff simply argues, in one cursory
sentence, that "[t]here is no bar to an award of punitive
damages against the individual defendants named in Plaintiff's
complaint."  (Pl.'s Opp'n 4.)  It therefore appears to the Court
that Plaintiff has conceded that his claims for punitive damages
under Section 1983 against Defendants DRPA and PATCO are subject
to dismissal.

21

A review of the case law regarding the availability of punitive damages under Section 1983 makes clear while the individual Defendant Officers may be sued for punitive damages in this case with respect to Plaintiff's Section 1983 claims, see Feldman v. Phila. Hous. Auth., 43 F.3d 823 (3d Cir. 1994), punitive damages cannot be sought from or assessed against Defendants DRPA and PATCO under Section 1983.  See City of Newport, 453 U.S. at 271; Eick, 1992 U.S. Dist. LEXIS 22710, at *12.  Accordingly, Defendants' motion to dismiss will be granted on this issue, and Plaintiff's claims for punitive damages under Section 1983 against Defendants DRPA and PATCO will be dismissed with prejudice.

> *(3)  Qualified Immunity for the Defendant Officers*

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).

22

The doctrine provides a government official immunity from suit rather than a mere defense from liability, and, thus, the issue of whether qualified immunity applies should be decided at the earliest possible stage in litigation.  Id.  "Qualified immunity ... gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."  Fiore v. City of Bethlehem, 510 F. App'x 215, 219-20 (3d Cir. 2013) (citing Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012)) (internal quotation marks and citations omitted).

Qualified immunity attaches if the official can demonstrate his or her conduct was "objectively reasonable."  See Harlow, 457 U.S. at 818.  "There are two prongs to the objective reasonableness inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful."  Davis v. Malitzki, 451 F. App'x 228, 232 (3d Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 200-01 (2001)).  If the answer to either question is "no," the analysis may end there.  See Pearson, 129 S. Ct. at 816; see also Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002) ("If the plaintiff fails to make out a constitutional violation, the

qualified immunity inquiry is at an end; the [official] is entitled to immunity.").

Although the issue of qualified immunity may properly be raised in a motion to dismiss and district courts should generally resolve whether qualified immunity applies at the earliest possible stage in litigation, the Third Circuit has also cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). The Court finds that this case falls into "the vast majority of cases" for which further development of the factual record is necessary. At this early stage of the proceedings, qualified immunity for the Defendant Officers cannot be conclusively established yet. Accurately assessing the reasonableness of the Defendant Officer's actions, under the totality of the circumstances, is not something that can be resolved at this time because there is insufficient information before the Court to make a determination of whether the alleged use of force by the Defendant Officers was reasonable under the

circumstances, and thus whether they are entitled to qualified immunity.[11]

The primary challenge to the Defendant Officers' conduct on July 26, 2011 is that the Officers used excessive force in pinning Plaintiff to the hot asphalt and leaving him there for a period of time that resulted in injury to Plaintiff, including second degree burns to approximately twenty-four percent of Plaintiff's body, and therefore violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.  "In determining whether the force used to affect a seizure is excessive, the question is whether, under the totality of the circumstances, the officers' actions were objectively reasonable."  Walke v. Cullen, 491 F. App'x 273, 277

---

[11]   The Court notes that in opposition to the motion to dismiss, Plaintiff claims that the July 26, 2011 incident was "video recorded by passers-by and published on YouTube."  (Pl.'s Opp'n 1.)  Plaintiff alleges that the "video shows ... Plaintiff restrained and on the ground as described above for 4.5 minutes prior to the arrival of EMTS."  (Id. at 5.)  Plaintiff further represents that the "video begins with the Plaintiff restrained and pinned on the asphalt surface."  (Id.)

In resolving the present motion to dismiss, the Court has not relied upon any of Plaintiff's assertions regarding the existence of its alleged video.  However, to the extent this video does exist, and may be probative in the case, and is otherwise admissible as evidence it could be instructive on the issue of qualified immunity at a later stage of these proceedings.

(3d Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 398–99;

Kopec v. Tate, 361 F.3d 772, 776–77 (3d Cir. 2004)).

The reasonableness of an officer's use of force is
determined by the totality of the circumstances, and the Third
Circuit has identified a non-exhaustive list of factors to
determine whether the force employed during a seizure was
reasonable.  These factors include: (1) the severity of the
crime at issue; (2) whether the suspect poses an immediate
threat to the safety of the officer or others; (3) whether the
suspect is actively resisting being seized or attempting to
evade seizure by flight; (4) the possibility that the suspect is
violent or dangerous; (5) the duration of the police action; (6)
whether the police action takes place in the context of
effecting an arrest; (7) the possibility that the suspect may be
armed; and (8) the number of persons the officer must contend
with at one time.  See Kopec, 361 F.3d at 776–77.  The Court
should also consider whether "the physical force applied was of
such an extent as to lead to injury." Mellott v. Heemer, 161
F.3d 117, 122 (3d Cir. 1998) (citation omitted).

Accepting the facts alleged in the complaint as true,
Plaintiff has sufficiently alleged a violation of the Fourth
Amendment for excessive force by the Defendants Officers.
Plaintiff claims that upon approaching Defendant Pawloski

26

seeking police assistance, Plaintiff was "knocked ... to the ground and kept ... pinned on the extremely hot asphalt surface." (Pl.'s Compl. ¶ 9.) Plaintiff further alleges that a significant portion of his body was left exposed on the 130° asphalt and he ultimately suffered second degree burns on over twenty-four percent of his body, respiratory failure, acute kidney injury, renal failure, and heatstroke. (Id. ¶¶ 10-12.) Plaintiff claims that he is permanently scarred and disabled as a result of his incident. (Id. ¶ 12.) Accepting this as true, the Defendant Officers' conduct, as alleged, is not objectively reasonable and is sufficient to allege a Fourth Amendment violation for the use of excessive force.

Moreover, the constitutional right to be free from the use of excessive force was clearly established at the time of the July 26, 2011 incident. When considering this step, courts should look to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007) (internal quotation omitted). As stated above, the law regarding the amount of force that is considered reasonable during an arrest or other such seizure is well-established. Accepting the facts as alleged in the complaint as true which the Court must do at this time, no reasonable officer in the

Defendant Officers' positions would have believed that keeping
Plaintiff pinned to extremely hot asphalt resulting in severe
burns and bodily injury was a lawful, reasonable amount of force
to use under the circumstances.   There are no allegations in the
complaint that show Plaintiff posed a threat to the Defendant
Officers or that demonstrate Plaintiff was resisting arrest or
attempting to evade arrest.[12]   Consequently, reasonable officers
in this particular situation would have known that the use of
such physical force as alleged here was impermissible.

---

[12]   The Court notes that the DRPA Incident Report represents
that Defendant Pawloski restrained Plaintiff because Plaintiff's
mental state, erratic behavior, and his attempt to get into the
Officer's running patrol car to "get out of here" indicated to
Defendant Pawloski that Plaintiff could harm himself or others.
(See DRPA Incident Report [Doc. No. 9-3] 1.)   At the summary
judgment stage of these proceedings, such facts would be
relevant to the Court's qualified immunity analysis.

   However, at this stage of the case, the Court is bound to
accept as true the facts alleged in the complaint and cannot
make credibility assessments between Plaintiff's allegations and
the Officers' purported reasons for restraining Plaintiff in
deciding the present the motion to dismiss.   While the DRPA
Incident Report is referred to in Plaintiff's complaint, it is
not integral to the complaint itself, nor does it become
integral simply because it discusses the incident that forms the
basis for Plaintiff's claims.   See Adams v. City of Atlantic
City, No. 13-7133, 2014 WL 2094090, at *6 n.2 (D.N.J. May 20,
2014).   Furthermore, the DRPA Incident Report cannot be used to
"displace the allegations of the complaint" and while it may
subsequently prove to be "probative evidence" in this case, it
is not proper to consider inconsistent facts contained in the
Report in assessing the Defendant Officers' claim for qualified
immunity at this stage.   See also Cole v. Town of Morristown,
No. 2:10-cv-04706, 2011 WL 3329156, at *2 (D.N.J. Aug. 1, 2011).

Accordingly, the Court finds that the Defendant Officers are not entitled to qualified immunity based on the record established at this time.[13]

### B. Dismissal of Plaintiff's State Law Claims

Defendants argue that all of Plaintiff's state law tort claims as alleged in Counts II and III must be dismissed against the Defendant Officers "because Plaintiff failed to provide notice of his claims within 90 days of the incident, as required by the New Jersey Tort Claims Act[.]" (Defs.' Mem. 12.) Relying upon N.J. STAT. ANN § 59:8-8, Defendants assert that where a claimant fails to provide notice of his claim within 90 days, his claims are forever barred, and therefore, Plaintiff claims in Counts II and III against the Defendant Officers must be dismissed because Plaintiff failed to filed a timely notice regarding these tort claims within 90 days of the July 26, 2011 incident, i.e. by October 24, 2011. (Id. at 13-14.)

Building on their contention that the state law tort claims in Counts II and III must be dismissed against the Defendant Officers for failure to provide the required notice under the

---

[13]   Accordingly, the Court will deny the Defendant Officer's motion to dismiss on the basis of qualified immunity without prejudice to the Defendant Officers' right to renew their assertion of qualified immunity at the appropriate stage of the proceedings including but not limited to a subsequent motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

New Jersey Tort Claims Act, Defendants DRPA and PATCO advance
this argument one step further, contending that Counts II and
III must also be dismissed against these Defendants.  Defendants
DRPA and PATCO point out that a "public entity 'is not liable
for an injury resulting from an act or omission of a public
employee where the public employee is not liable." (Id. at 14-
15.)  Thus, DRPA and PATCO argue that because the claims against
the Defendants Officers must be dismissed for lack of notice,
the state law tort claims against the DRPA and PATCO must
similarly be dismissed as there is no longer a basis for
vicarious liability against these entity Defendants.  (Id.)

        Plaintiff counters that there is no basis to dismiss the
state law tort claims against any Defendant for failure to
provide notice under the New Jersey Tort Claims Act because the
DRPA is not a public entity within the meaning of the Act and
none of the provisions of the Act apply to the DRPA, or its
employees. (Pl.'s Opp'n 6-7.)  Specifically, Plaintiff
primarily relies on the New Jersey Supreme Court's decision in
Bell v. Bell, 416 A.2d 829, 833 (N.J. 1980), where the court
explicitly held that the "DRPA is not a 'Public entity' within
the meaning and scope of the [New Jersey Tort Claims Act] so
that none of its provisions apply to [the] DRPA[.]"  The New
Jersey Supreme Court expressly noted that the Tort Claims Act

"imposes stringent notice of claim requirements" and that the Act's "restrictive approach [to tort claims brought against a public entity typically entitled to sovereign immunity] demonstrate[d] its inapplicability to tort claims against [the] DRPA." Bell, 416 A.2d at 832.  Plaintiff contends that the New Jersey Supreme Court's ruling in Bell that none of the provisions of the Tort Claims Act, including its stringent notice provisions, are applicable to the DRPA, applies with equal force to the police officers employed by the DRPA.  (Pl.'s Opp'n 7.)  Plaintiff argues that a contrary finding by this Court that notice is required under the Act with respect to claims asserted against the Defendants Officers would undercut the New Jersey Supreme Court's holding in Bell.  (Id.)

Although Defendants concede that the DRPA is not a "public entity" for purposes of the Tort Claims Act, they argue that the "Tort Claims Act does [still] apply to claims against DRPA police officers."  (Defs.' Mem. 13 n.5) (citing D'Arrigo v. Gloucester City, No. 04-5967, 2007 WL 1755970, at *10 (D.N.J. June 19, 2007)).  Defendants assert that D'Arrigo stands for the proposition that under N.J. STAT. ANN. § 32:4-6, "when a DRPA's officer's conduct occurs wholly within New Jersey, New Jersey tort law and its attendant immunities[, including the good faith immunity provided for in the Tort Claims Act at N.J. STAT. ANN. §

31

59:3-3] apply[.]" (Defs.' Mem. 13 n.5.) Relying on the district court's finding in D'Arrigo that the good faith immunity defense under the Tort Claims Act was a viable defense to the DRPA police officer in that case, Defendants analogize that the notice provisions of the Tort Claims Act are similarly applicable to the Defendant Officers here. (Id.) Plaintiff specifically challenges Defendants' reliance on D'Arrigo arguing that it is not applicable in this case.

The New Jersey Tort Claims Act provides that "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J. STAT. ANN. § 59:8-3. The Tort Claims Act further describes the various information that a claim must include, see id. § 59:8-4, and instructs that "[a] claim for damage or injury arising under this act against the State shall be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission[,]" while "[a] claim ... against a local public entity shall be filed with that entity." See id. § 59:8-7. Further, "[a] claim shall be presented to the public entity by delivering it to or mailing it certified mail to the office of the Attorney General or the office of the State agency allegedly involved" or

32

"may be presented to a local public entity by delivering it or mailing it certified mail to the entity." Id. § 59:8-10.  As Defendants correctly point out, "[a] claim relating to a cause of action for death or for injury or damage to person or to property [must] be presented ... not later than the 90th day after accrual of the cause of action." Id. § 59:8-8.  The "claimant shall be forever barred from recovering against a public entity or public employee if ... [t]he claimant failed to file the claim with the public entity within 90 days of accrual of the claim[.]" Id.

After careful review, the law is absolutely clear that none of the provisions of the Tort Claims Act, including its strict notice of claim requirements, are applicable to the DRPA itself. See Bell, 416, A.2d 832-33.  The New Jersey Supreme Court has held unequivocally that the DRPA is not a "public entity" within the meaning of the Tort Claims Act.  Accordingly, a plaintiff's failure to present a claim within 90 days does not bar the plaintiff from recovering against the DRPA.  However, the issue of whether the notice of claim requirements are separately applicable to individual DRPA police officers is not as clear or definitive as either of the parties suggest here.

As the moving party seeking dismissal of Plaintiff's state law tort claims on this basis, Defendants bear the burden to

demonstrate that Plaintiff's state law tort claims warrant
dismissal for failure to properly notice the DRPA Officers under
the Tort Claims Act.  Defendants have failed to meet their
burden here.  They have not presented any binding, or even
persuasive, authority directly on point which specifically
requires that DRPA Officers received notice in accordance with
the provisions of the Act and that the absence of such notice
bars a plaintiff's tort claims against the DRPA Officers.

Moreover, the Court is not persuaded by Defendants'
reasoning that the narrow conclusion in D'Arrigo regarding the
potential applicability of the good faith immunity defense set
forth in the Act to DRPA police officers is sufficient to make
the inferential leap that the notice provisions of the Act are
also applicable when bringing tort claims against DRPA police
officers.  The decision in D'Arrigo, a non-binding case in this
district, specifically relied on N.J. STAT. ANN. § 32:4-6.
Section 32:4-6 provides in pertinent part that "police officers
appointed by the Delaware River Port Authority shall have all of
the powers, including the right to carry firearms while on duty,
and all of the immunities conferred by law on police officers or
municipal police officers in the enforcement of the laws of the
State of New Jersey and the Commonwealth of Pennsylvania[.]"

34

Relying on this explicit language, the district court in
D'Arrigo made a limited determination on the issue of the good
faith immunity defense under the Tort Claims Act.  Section 32:4-
6 specifically provides for the grant of "all ... the
immunities" conferred upon law enforcement in the state of New
Jersey to police officers employed by the DRPA.  This explicit
grant of immunities was sufficient in D'Arrigo to permit a
finding that the good faith immunity provided for in the Act is
also applicable to DRPA police officers.  However, with respect
to the notice provisions of the Act, there is no express
statutory authority or case law for this Court to rely upon in
making a finding contrary to the New Jersey Supreme Court's
ruling in Bell, i.e., that notice is required under the Act when
asserting claims against police officers employed by the DRPA.
Under the Tort Claims Act,

Furthermore, it appears to the Court that Defendants'
argument regarding the need for notice to the Officers would
result in an end run around the express holding of Bell.  That
is to say, Defendants argue that (1) the Tort Claims Act
requires notice to the Defendant Officers; (2) Plaintiff's
failed to provide that notice; (3) thus, Plaintiff's claims
against the Defendant Officers must be dismissed for failure to
comply with the notice provision; and (4) the dismissal of these

claims against the Defendant Officers, also warrants dismissal
of these claims against the DRPA and PATCO.  However, if the
Court were to permit this multi-layered argument to proceed, it
would essentially allow the DRPA to easily avoid liability for
tort claims brought against it where a plaintiff fails to file a
timely notice of claim against the individual DRPA police
officers involved.  This cannot have been the outcome the New
Jersey Supreme Court envisioned when it held that none of the
provisions of the Tort Claims Act apply to the DRPA.  Moreover,
the Tort Claims Act requires presentation of a claim in order to
bring an action "against a public entity or public employee[.]"
If the DRPA is not considered a "public entity" for purposes of
the Act, then, in the absence of clear authority on point, it is
logical that its employees – including DRPA police officers –
cannot be considered "public employees."

     Therefore, the Defendant Officers' argument fails, and the
state law tort claims asserted in Counts II and III will not be
dismissed on this basis.  For the same reasons, the DRPA and
PATCO are also not entitled to a dismissal of these claims.
Accordingly, Defendants motion to dismiss the state law tort
claims asserted in Counts II and III of the complaint will be
denied in its entirety.

**V.    <u>CONCLUSION</u>**

For the foregoing reasons, Defendants' motion [Doc. No. 9] to dismiss is granted in part and denied in part.  An Order consistent with this Opinion will be entered.


Dated:  June 26, 2014          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.